IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DONALD MILLIGAN, | ) | CASE NO. 1:10-CV-126 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE McHARGH |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner | ) | |
| of Social Security, | ) | |
| | ) | **MEMORANDUM OPINION** |
| Defendant. | ) | |

This case is before the undersigned Magistrate Judge pursuant to consent of the parties (Doc. 20). The issue before the Court is whether the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Donald Milligan's application for Supplemental Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C. §1381 *et seq.*, is supported by substantial evidence and, therefore, conclusive.

For the reasons set forth below, the Court REVERSES the decision of the Commissioner and orders that the case be REMANDED for further proceedings not inconsistent with this decision.

## I. INTRODUCTION & PROCEDURAL HISTORY

On June 15, 2006, Donald Milligan ("Plaintiff" or "Milligan") protectively filed an application for Supplemental Security Income benefits alleging that he became disabled on July 1, 2004, due to suffering from Hepatitis C, allergies, arthritis, atopic dermatitis, depression, anxiety, bipolar disorder,

degenerative arthritis, concussion and leg problems (Tr. 91-96, 105).[1] Plaintiff's application was denied initially and upon reconsideration (Tr. 72-74, 77-79). Plaintiff timely requested and was granted an administrative hearing (Tr. 80). On May 1, 2009, Plaintiff appeared with counsel and testified at a hearing held in Cleveland, Ohio before Administrative Law Judge Dennis LeBlanc (the "ALJ" or "ALJ LeBlanc") (Tr. 29-61). During the hearing, Plaintiff amended his onset date to June 15, 2006 (Tr. 33). Vocational expert, Mr. Gene Burkhammer (the "VE") also testified at the hearing (Tr. 57-60).

The ALJ issued an unfavorable written decision on June 2, 2009, in which he found at step five of the five-step sequential evaluation[2] that Plaintiff retained the residual functional capacity

---

[1] Milligan originally filed an application for benefits on November 8, 2004, which was denied initially and on reconsideration (Tr. 65-69, 88-90). However, Plaintiff did not appeal the Commissioner's denial of this application.

While Defendant's brief references Page ID numbers in the record, the Court cites to the transcript number.

[2] The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability." *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The Sixth Circuit has summarized the five steps as follows:

(1) If a claimant is doing substantial gainful activity – i.e., working for profit – she is not disabled.

(2) If a claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.

(3) If a claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

(4) If a claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.

(5) Even if a claimant's impairment does prevent her from doing her past relevant

("RFC") to perform a limited range of light work and therefore, was not disabled (Tr. 17-28). Plaintiff requested review of the ALJ's decision from the Appeals Council (Tr. 11-13). On December 23, 2009, the Appeals Council denied Plaintiff's request, thereby making the ALJ's determination the final decision of the Commissioner (Tr. 1-3). Plaintiff now seeks judicial review under 42 U.S.C. § 1383(c).[3]

Plaintiff was forty-four years old at the time of the ALJ's hearing (Tr. 101). ALJ LeBlanc determined that Plaintiff had no past relevant work experience (Tr. 27).

## II. SUMMARY OF BACKGROUND INFORMATION

The parties provided a detailed history of Plaintiff's medical history in their briefs (Doc. 15 & 19). Plaintiff has a long-standing history of problems associated with his skin. Numerous physicians have diagnosed and treated his skin disorder with a variety of medications. Milligan also has a prolonged history of substance abuse. However, he claims to have stopped abusing drugs in June of 2007, although there is some conflicting evidence in the record showing substance abuse as recently as April of 2009. Additionally, Plaintiff was incarcerated after his alleged onset date from July of 2007 until July of 2008 (Tr. 734).

## III. DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when he establishes disability within the meaning of the Social Security Act. *See* 42

---

work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

[3]42 U.S.C. § 1383(c)(3) states that judicial review is provided under 42 U.S.C. 405(g).

U.S.C. §§ 423, 1381. A claimant is considered disabled when he cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." *See* 20. C.F.R. §§ 404.1505, 416.905.

## IV. STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards. *See Cunningham v. Apfel*, 12 F. App'x. 361, 362 (6th Cir. 2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence. *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Id.* The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).

This Court may not try this case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Garner*, 745 F.2d at 387. However, it may examine all evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

4

## V. **ANALYSIS**

After completing a review of the record, ALJ Dennis LeBlanc determined that Milligan was not disabled under the Social Security regulations (Tr. 17-28). At step one of the sequential evaluation analysis, the ALJ found that Milligan had not engaged in substantial gainful activity since June 15, 2006 (Tr. 19). At step two, ALJ LeBlanc ruled that Plaintiff suffered from the following severe impairments: "atopic dermatitis, substance abuse until June 2007, bipolar disorder, degenerative disc disease of the cervical spine, Hepatitis C, [and] loss of vision in the right eye" (Tr. 20). Next, the ALJ concluded that absent Milligan's substance abuse, he would continue to suffer from his remaining severe impairments (Tr. 23). However, ALJ LeBlanc determined that Plaintiff's severe impairments did not individually or in combination meet or equal one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 23-24). Before moving to step four, the ALJ found that if Milligan had stopped his substance abuse from his onset date through June of 2007, he would have retained the RFC:

> to perform light work as defined in 20 CFR 416.967(b) except he can only occasionally push or pull with the upper extremities. He can occasionally climb ramps or stairs. He cannot climb ladders, ropes or scaffolds. He can only occasionally balance, kneel, crouch or crawl. He cannot perform overhead work. He has limited depth perception and cannot work around hazards such as dangerous machinery or heights. He can understand, remember and carry out non-detailed (up to 3 steps) instructions. He can engage in occasional and superficial interaction with the general public. He has had these same limits since June 2007, when he stopped the substance use.

(Tr. 25). At step four, ALJ LeBlanc determined that Plaintiff had no past relevant work experience (Tr. 27). Finally, at step five, the ALJ concluded that Plaintiff's RFC permitted him to perform jobs which existed in significant numbers in the national economy (Tr. 27-28). Specifically, the ALJ found that Plaintiff could work as a small products assembler, vending attendant or mail clerk (Tr.

5

27).

Milligan challenges the ALJ's decision on two grounds. First, Plaintiff avers that ALJ LeBlanc improperly evaluated his atopic dermatitis, in that, the ALJ did not conclude that Milligan's condition met or at least equaled 20 C.F.R. Part 404, Subpart P, Appendix 1, § 8.05 ("Listing § 8.05" or the "Listing"). Second, Milligan contends that the ALJ failed to adequately assess the resulting limitations of his cervical spine impairment.

### A. Whether Plaintiff Met or Equaled Listing § 8.05 Dermatitis

The Social Security regulations recognize atopic dermatitis as a disabling condition. The regulations list specific criteria which must be present in order for a claimant to be determined disabled as a result of suffering from this condition. 20 C.F.R. Part 404, Subpart P, Appendix 1, § 8.05. Listing § 8.05 states: "*Dermatitis* (for example, psoriasis, dyshidrosis, atopic dermatitis, exfoliative dermatitis, allergic contact dermatitis), with extensive skin lesions that persist for at least 3 months despite continuing treatment as prescribed." *Id.*

ALJ LeBlanc ruled that Plaintiff did not meet or equal Listing § 8.05 because "the record show[ed] that the claimant h[ad] run out of his medication and [wa]s not compliant." (Tr. 24). Plaintiff now maintains that the ALJ's decision was erroneous because the ALJ failed to consider whether Plaintiff's non-compliance was justifiable before concluding that it precluded a disability finding.

Defendant, on the other hand, contends that the ALJ's failure to analyze Plaintiff's non-compliance was irrelevant because Plaintiff's non-compliance did not affect whether his condition met or equaled the Listing. Defendant asserts that an ALJ's determination of whether a claimant meets or equals a listing is based on medical considerations alone (Def.'s Br. at 12). Defendant cites

6

Social Security Ruling 86-8 in support of its argument. However, this ruling does not directly address the issue. Instead, SSR 86-8 provides an overall break down of the sequential evaluation process. SSR 86-8.

Because Listing § 8.05 requires the claimant to show persistent lesions lasting for a period of three months *despite continuing treatment*, at a minimum, it was incumbent upon the ALJ to contemplate Plaintiff's treatment of this condition. Any analysis of whether Plaintiff met or equaled the listing would have had to include at least some consideration of Plaintiff's treatment history because such a consideration is inherent within the Listing's requirements. Thus, the Court is not fully persuaded by Defendant's argument that the ALJ was not obligated to consider this factor at all.

Defendant's explanation of the ALJ's decision is also unpersuasive because it does not coincide with the ALJ's finding. The Commissioner avers that Plaintiff did not meet or equal the Listing because the medical evidence did not show that Milligan suffered from extensive lesions that persisted for three months despite continuing treatment. Defendant appears to be arguing that the medical evidence did not support Milligan's claim that he suffered from extensive lesions for the requisite period of time, thereby making any discussion of non-compliance irrelevant because the medical evidence didn't support extensive lesions in the first instance. To the extent that Defendant is asserting this claim, it is rejected because it does not agree with the ALJ's written opinion. ALJ LeBlanc cited Plaintiff's non-compliance as the reason why Milligan did not meet the Listing (Tr. 24). The ALJ's silence on the issue of whether there was sufficient medical evidence to demonstrate that Milligan experienced extensive lesions which persisted for at least three months implies that the ALJ did not dispute this point. In turn, it signals to the Court that ALJ LeBlanc believed that

7

Milligan met his burden of proof regarding the existence of extensive lesions.

Regardless of the Court's view of Defendant's argument above, the undersigned concludes that the ALJ's decision was erroneous on other grounds. While the ALJ cited non-compliance as the basis of his finding that Milligan did not meet or equal the Listing, ALJ LeBlanc's opinion only cited to two instances of non-compliance, one of which was outside of the relevant review period (Tr. 24). During the hearing, Plaintiff amended his disability onset date to June 15, 2006 (Tr. 33). Yet, ALJ LeBlanc's opinion referenced an instance of non-compliance noted in medical records dated from June 6, 2006, prior to Plaintiff's amended onset date (Tr. 24, 580). The second occurrence of non-compliance cited by the ALJ was from September of 2008 (Tr. 24, 730). Although this instance of non-compliance was within the relevant time frame, Milligan's doctor indicated that he had ran out of his medication two months prior and could not afford other medications (Tr. 730). It is unclear to the Court how this sole instance of non-compliance could form the basis of ALJ LeBlanc's decision that Plaintiff did not meet or equal Listing § 8.05.[4] The undersigned notes that nearly eight months transpired between Milligan's non-compliance in September of 2008 and the date of the hearing. The ALJ did not offer an explanation of why he did not find Plaintiff to have met or equaled the Listing during this eight month period. This is particularly troubling given the medical evidence in the record documenting Plaintiff's prolonged history with this impairment. Although the ALJ's decision offers a lengthy discussion regarding

---

[4]The Court acknowledges that Plaintiff abused drugs from his onset date through June of 2007 (Tr. 23), and was incarcerated from approximately July of 2007 until July of 2008 (Tr. 734). However, the ALJ found that Plaintiff's remaining physical conditions, including his atopic dermatitis, existed as of his onset date and did not improve despite Milligan's cessation of substance abuse in June of 2007 (Tr. 23). Thus, his substance abuse did not further exacerbate his impairments.

Plaintiff's history with substance abuse, the Court finds the decision lacking on this issue. An ALJ's opinion should provide the reviewing court with enough information so that it may conduct a proper review of the decision. *See Reynolds v. Comm'r of Soc. Sec.*, No. 09-2060, 2011 WL 1228165, at *3-4 (6th Cir. Apr. 1, 2011) (case remanded because ALJ failed to give an explanation of his ruling at step three, thereby preventing the court from conducting meaningful judicial review). Thus, remand is appropriate.

### B. The ALJ's Failure To Adhere To Social Security Ruling 82-59

Plaintiff also maintains that ALJ LeBlanc should have evaluated his non-compliance according to the factors listed in Social Security Ruling 82-59 prior to concluding that he was not disabled. Although Defendant argues that the ALJ was not obligated to consider Plaintiff's non-compliance in his evaluation of whether Plaintiff met or equaled Listing § 8.05, Defendant admits that "an ALJ must consider whether a claimant can afford treatment in the context of credibility findings" (Def.'s Br. at 12). Yet, ALJ LeBlanc's opinion is completely devoid of any discussion regarding Plaintiff's failure to adhere to his medical treatment regimen.

Social Security Ruling 82-59 provides in pertinent part:

> An individual who would otherwise be found to be under a disability, but who fails without justifiable cause to follow treatment prescribed by a treating source which the Social Security Administration (SSA) determines can be expected to restore the individual's ability to work, cannot by virtue of such "failure" be found to be under a disability.

SSR 82-59. The Ruling also sets forth numerous factors that an ALJ should consider to determine whether the claimant's non-compliance was justifiable.

As the Court previously mentioned, the ALJ based his finding that Milligan did not meet or equal Listing § 8.05 on Milligan's non-compliance with treatment. Thus, presumably, absent

9

Plaintiff's non-compliance, Milligan would have met or equaled the Listing. Social Security Ruling 82-59 applies in such circumstances. It requires the ALJ to assess the claimant's non-compliance to determine whether it was justifiable before determining that the claimant's non-compliance precludes a disability finding. SSR 82-59. The ruling lists several justifiable reasons to excuse a claimant's non-compliance with treatment, two of which appear to apply to the facts of this case: (1) the inability to afford treatment; and (2) instances where a treating source advises against the treatment prescribed for the condition. *Id*.

The record shows that Plaintiff indicated that he was not taking his medication because he could not afford to pay for it. During the hearing Milligan testified, "I got [a] lot of medications [and] I can't afford all of them, I get, you know, the ones that I need. Priority wise. And, I just have no way of, I, [have] no, no income." (Tr. 39). Ironically, in the same document cited by the ALJ in noting Plaintiff's non-compliance, Milligan also told his doctor that he could not afford treatment (Tr. 730).

In addition, one of Plaintiff's examining physicians, Dr. Mark LeVine, remarked in a report submitted to the Social Security Administration, that he was "unwilling to continue [Plaintiff's course of treatment with steroids] secondary to many potential side effects." (Tr. 644). Dr. LeVine offered this opinion despite noting that Plaintiff's condition at times affected up to 90% of his body (Tr. 643). The doctor further opined that Milligan's condition was "inadequately or totally unresponsive to all prior treatments" (Tr. 608).

Although the ALJ questioned Milligan about his non-compliance during the hearing, the ALJ's questions were not focused on the reasons why Plaintiff could not access treatment. Rather, the ALJ's questioning centered more on Plaintiff's ability to engage in criminal activity despite his

10

impairment (Tr. 35-45). While the ALJ concluded that Milligan likely did suffer from some degree of pain due to his atopic dermatitis, the ALJ partly discredited Plaintiff because he did not follow his treatment regimen. The ALJ should have examined whether Plaintiff understood the nature of his treatment in relation to his disability claim, and further inquired into Plaintiff's reasons for failing to adhere to his doctor's orders prior to finding that he was not disabled. *See Koch v. Astrue, No. 4:10CV1828, 2011 WL 1119759, at \*3* (N.D. Ohio March 15, 2011) (Remand warranted due to the ALJ's failure to adhere to dictates of SSR 82-59). The Court is in no way suggesting that on remand the ALJ is compelled to find that Plaintiff's non-compliance was justifiable. Rather, the Court recognizes that the ALJ failed to perform a critical part of his analysis directly affecting the disposition of Plaintiff's application for benefits. The ALJ must conduct this analysis to verify whether Plaintiff's actions were excusable. On remand, the ALJ should address Plaintiff's non-compliance in accordance with the regulations and rulings governing disability determinations, namely Social Security Ruling 82-59.

### C. ALJ's RFC Determination

As a final matter, the undersigned notes that the ALJ's RFC finding does not appear to adequately address all of the debilitating features of Plaintiff's impairment with his skin or his cervical spine. Two physicians who examined Plaintiff both concluded that his atopic dermatitis impairment was severe (Tr. 608, 646). While ALJ LeBlanc credited portions of the doctors' opinions, he ignored others. For instance, the ALJ relied upon a portion of Dr. LeVine's report stating that environmental and psychosocial stresses could cause Plaintiff's symptoms to flare up, but failed to acknowledge that Dr. LeVine also opined that these flare ups may be "unsightly [and] extremely uncomfortable making it impossible for [Milligan] to interact in society" (Tr. 26, 644).

Additionally, while Dr. Neil Korman opined that Plaintiff did not suffer from any specific work related limitations, Dr. Korman did note that Plaintiff's lesions were very pruritic and only minimally improved with treatment (Tr. 646, 614). "The ALJ must consider all the record evidence and cannot 'pick and chose' only the evidence that supports his position." *Hopkins v. Comm'r of Soc. Sec.*, No. 1:07-cv-964, 2009 WL 1360222, at *14 (S.D. Ohio May 14, 2009). Examining physicians noted lesions and excoriations[5] on Milligan's body, particularly on his face, scalp, arms, legs, trunk, hands and feet (Tr. 605, 646 & 730). The ALJ's written opinion does not explain his choice to credit significant portions of these doctors' findings while ignoring other parts.

The ALJ appeared to attribute great weight to Dr. Korman's opinion that Plaintiff did not have problems manipulating objects or walking (Tr. 26). The Social Security Administration defines extensive lesions as "those that involve multiple body sites or critical body areas, and result in a very serious limitation." 20 C.F.R. Part 404, Subpart P, Appendix 1, § 8.00(C)(1). It lists examples of such lesions as those which seriously limit one's ability to ambulate or to conduct fine motor movements with the palms. *Id.* at (C)(1)(b)-(c). However, the regulation does not limit a disability finding to these enumerated examples. Thus, Plaintiff's ability to walk and/or manipulate objects would not necessarily preclude a finding of disability. The Court's review of the ALJ's opinion leads it to conclude that the ALJ did not give proper consideration to the pain and other disabling features of Plaintiff's impairment. For example, the ALJ's opinion does not mention that Plaintiff's lesions were extremely pruritic, or how this factor would have limited Plaintiff's ability to perform substantial gainful activity. This failure leaves the Court to guess as to whether the ALJ had

---

[5]An excoriation is defined as a scratch or abrasion of the skin. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY (30th ed. 2003).

12

legitimate reasons for dismissing this evidence or whether he merely overlooked it.

The ALJ's statement of Plaintiff's RFC also prevents the Court from finding that Plaintiff was able to perform the jobs identified by the vocational expert. According to Dr. LeVine, the main disabling feature of Plaintiff's impairment was his appearance due to the unsightly lesions on visible portions of Milligan's body, in addition to the uncomfortable lesions on his hands and feet. The RFC articulated by ALJ LeBlanc in the hypothetical question posed to the VE did not address this limitation. Thus, it is not clear whether Plaintiff would still be able to perform the jobs identified by the VE, or other jobs existing in significant numbers, despite Milligan's unsightly appearance during a flare up of his condition. On remand, the ALJ may elect to seek a medical expert to testify in order to render an opinion as to the severity of Plaintiff's condition. Such testimony may assist the ALJ in evaluating how much Plaintiff's symptoms, including pain, pruritic lesions, and possible bleeding, might affect his ability to work.

Finally Plaintiff maintains that the ALJ did not adequately assess the resulting limitations of his cervical spine impairment. A computerized tomography ("CT") scan of Plaintiff's cervical spine in 2007 revealed that he had moderate spondylosis in his spine between C3 and C7 (Tr. 678). ALJ LeBlanc determined that Plaintiff's cervical spine impairment was severe but not disabling. The ALJ's decision was partly based on the findings of Dr. Michael Harris (Tr. 22). Dr. Harris examined Plaintiff on October 2, 2008 (Tr. 744-46).[6] At the conclusion of the examination, Dr. Harris opined that despite Plaintiff's condition, he was capable of performing work at the sedentary to light exertional levels and was able to lift up to twenty pounds occasionally (Tr. 746). Subsequent

---

[6]It appears that a Dr. Bradley McCrady also participated in Plaintiff's examination (Tr. 744).

to Dr. Harris' evaluation, Plaintiff underwent a second CT scan of his cervical spine in February of 2009 (Tr. 756).  Plaintiff's physician's noted that this CT scan "showed auto fusion of C4-6 that was not present on [the] previous MRI in 2007" (Tr. 751).  ALJ LeBlanc mentioned the progressed deterioration of Milligan's spine depicted in the new CT scan, but labeled this deterioration as a new condition since it was not present in the original CT scan performed in 2007 and was not present on Plaintiff's onset date (Tr. 26).

In reviewing Plaintiff's application for benefits, it was the ALJ's duty to determine whether Plaintiff was disabled at any time on or after his onset date. *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993).  Accordingly, it was not appropriate for ALJ LeBlanc to ignore this new medical evidence simply because it showed a condition which was not present on Plaintiff's onset date.  The ALJ still had a duty to review the second CT scan findings and determine what effect, if any, Plaintiff's worsened cervical spine impairment, had on his ability to work from the time his condition declined.  Dr. Robert Lee examined Plaintiff in March of 2009, after reviewing his new CT scan results (Tr. 756-59).  Dr. Lee opined that extension in Milligan's neck was severely painful and that Milligan had a significant decrease in the range of motion in his neck (Tr. 758).  Dr. Lee's findings should have alerted the ALJ to carefully scrutinize Plaintiff's worsening cervical neck impairment based on the latter CT scan.  On remand the ALJ should re-examine this evidence, seeking expert medical testimony, if necessary, to make a determination of what limiting effects Plaintiff's worsening condition put on his ability to perform work on a sustained basis.

## VI.  DECISION

For the foregoing reasons, the Magistrate Judge **REVERSES** and **REMANDS** the decision of the Commissioner to the Social Security Administration for further proceedings not inconsistent with this opinion.

s/ Kenneth S. McHargh
Kenneth S. McHargh
United States Magistrate Judge

Date: April 26, 2011.